UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

ANGELA RICHARDSON                                                                    PLAINTIFF
ADC #712575

V.                         No. 3:22-CV-82-DPM-JTR

DENNIS MCGINNIS,
Sgt., McPherson Unit, ADC                                                            DEFENDANT

## RECOMMENDED DISPOSITION

The following Recommended Disposition has been sent to Chief United States District Judge D. P. Marshall Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Marshall may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

### I.  Introduction

On March 28, 2022, Plaintiff Angela Richardson ("Richardson"), an African American inmate in the McPherson Unit of the Arkansas Division of Correction ("ADC"), filed a *pro se* § 1983 Complaint alleging Defendant Sergeant Dennis McGinnis ("McGinnis") racially discriminated against her and other black inmates.

*Doc. 2*. After screening the Complaint, Richardson was allowed to proceed with a Fourteenth Amendment equal protection claim against McGinnis.[1] *Doc. 6*. On May 27, 2022, McGinnis filed an Answer to the Complaint. *Doc. 10*.

On July 1, 2022, McGinnis filed a Motion for Judgment on the Pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. *Doc. 15*. Richardson has filed a Response. *Doc. 21*. Thus, the issues are joined and ready for disposition.

## II. Discussion

When deciding a Rule 12(c) Motion for Judgment on the Pleadings, the Court applies the same legal standard used to decide a Rule 12(b)(6) Motion to Dismiss for failure to state a claim. *Ashley Cnty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). The Court must accept all facts alleged in the Complaint as true and construe those facts in the light most favorable to the plaintiff. *Wishnatsky v. Rovner*, 433 F.3d 608, 610 (8th Cir. 2006). Material outside the pleadings generally must be ignored. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). However, public records and materials "necessarily embraced by the pleadings," may be considered. *Id.* (citations omitted).

### A. Factual Allegations

Richardson has alleged the following facts in support of her racial discrimination claim:

---

[1] Richardson's retaliation claim against McGinnis was dismissed, without prejudice, for failure to state a claim upon which relief may be granted. *Doc. 7; Doc. 11*.

Discrimination Allegations Related to Digital Computer Tablets

1.  Inmates in the McPherson Unit may pay a monthly fee to use digital computer tablets. *Doc. 2 at 9*. Among other features, these tablets have applications that give the inmates the ability to conduct legal research. *Id.*

2.  Inmates who pay the monthly fee can pick up their tablet during "tablet call," which generally occurs around 7:30 to 8:30 each morning. *Doc. 2 at 8*.

3.  At tablet call on January 22, 2021, McGinnis denied African American inmate Jessica Guy's request to charge the battery on her tablet, which had a fifty percent (50%) charge. *Doc. 2 at 7, 13*.

4.  Later that same day, McGinnis allowed a white inmate, Jessica Fetter, to charge the battery on her tablet.

5.  On September 8, 2021, Richardson "had court deadlines to meet" and wanted to conduct legal research. *Doc. 2 at 8*. She asked Lieutenant Cox if she could charge the battery on her tablet. *Doc. 2 at 9*. Lieutenant Cox told McGinnis to allow Richardson to charge her battery on her tablet but "McGinnis ignored her order." *Doc. 2 at 9*.

6.  At tablet call the morning of December 13, 2021, Richardson noticed that her tablet's battery was less than twenty-five percent (25%) charged. Because she needed to conduct legal research, she asked McGinnis if she could charge it.

*Doc. 2 at 8*. McGinnis told her it was "against policy" to allow her to charge her tablet. *Id.*

7. "In the past," McGinnis has denied Richardson access to her tablet when she tried to pick it up *after* morning "tablet call." *Doc. 2 at 8, 32*.

8. On January 5, 2022, McGinnis allowed a white inmate, Erica Madewell, to pick up her tablet *after* the time designated for "tablet call." *Doc. 2 at 8, 32*.

Discrimination Allegations Related to Hair Styles

9. The ADC has an inmate grooming policy that is designed to "minimiz[e] opportunities for disguise and for transport of contraband and weapons." ADC Administrative Directive 16-01 ("AD 16-01"), *Doc. 2 at 24–25*.

10. Under this policy, "[a]ll inmates must maintain a hair style that is worn loose, clean, and neatly combed. No styles are permitted that make it difficult to search the hair, including cornrows, braids, pony tails, or dread locks." *Doc. 2 at 24*.

11. On January 22, 2021, McGinnis did not reprimand Emily Fetters, a white inmate, for wearing her hair in a braid. *Doc. 2 at 6*.

12. On December 14, 2021, Deputy Warden Eboni Harris ("Harris") asked Richardson "if her hair was [in] dreadlocks[] or altered." *Doc. 2 at 7*. Richardson replied that her hair was not in dreadlocks. *Id.*

13. McGinnis overheard the conversation between Harris and Richardson and, later that same day, accused Richardson of having her hair in a style that did not comply with ADC policy. *Doc. 2 at 7*. McGinnis did not report Richardson or take any additional action regarding her allegedly non-compliant hair. *Id.*

14. On unspecified dates, McGinnis denied "two new African American inmates chow" because he believed their hair did not comply with ADC policy. *Doc. 2 at 7*.

<u>Discrimination Allegations Related to Clothes Lines</u>

15. To wash and dry their clothes, McPherson inmates often use string and nails to create clothes lines in their cells. *Doc. 2 at 7–8*.

16. On December 19, 2021, McGinnis "aggressively snatched down" the clothes line Richardson had hung in her cell and stated: "Richardson get this shit down!" *Doc. 2 at 7*.

17. On that same day, many white inmates also had clothes lines hanging in their cells but "McGinnis did not go into their rooms" or "say a single word" to those inmates about their clothes lines. *Doc. 2 at 8*.

18. McGinnis's "aggressive behavior" on December 19 caused Richardson to feel "emotionally driven." *Doc. 2 at 8*.

### B. McGinnis's Motion For Judgment On The Pleadings

In his Motion for Judgment on the Pleadings, McGinnis argues that: (1) all of the individual capacity claims in Richardson's Complaint must be dismissed because qualified immunity protects him from the improperly pleaded and supported equal protection claims; and (2) as an employee of the state, sovereign immunity protects him from the equal protection claims Richardson has asserted against him in his official capacity. *Doc. 15*.

> **1. Because Richardson's Individual Capacity Equal Protection Claims Against McGinnis Fail To State A Claim Upon Which Relief May Be Granted, McGinnis is Entitled To Qualified Immunity On Those Claims**

"Under the doctrine of qualified immunity, a court must dismiss a complaint against a government official in his individual capacity that fails to state a claim for violation of 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hager v. Arkansas Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013) (citations omitted). In determining if a defendant is entitled to qualified immunity, the Court must conduct a two-prong inquiry into whether there has been a deprivation of a constitutional right and, if so, whether that constitutional right was "clearly established." *Robbins v. City of Des Moines*, 984 F.3d 673, 678 (8th Cir. 2021). A district court has discretion to decide which prong of the analysis should be addressed first. *Watson v. Boyd*, 2 F.4th 1106, 1112 (8th Cir. 2021). In this case, it is in the interest of judicial efficiency to begin by analyzing

whether Richardson "has alleged a deprivation of a constitutional right at all." *Bradford v. Huckabee*, 394 F.3d 1012, 1015 (8th Cir. 2005).

To state a viable equal protection claim, Richardson must allege facts demonstrating that: (1) "she was treated differently than others who were similarly situated;" (2) McGinnis intentionally discriminated against her on account of her race; and (3) she was injured by McGinnis's discriminatory conduct. *In re Kemp*, 894 F.3d 900, 910 (8th Cir. 2018); *Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007).

Richardson's equal protection claim rests solely on her allegations that: (1) McGinnis did not allow her to charge the battery on her tablet on two occasions; (2) McGinnis did not allow her to retrieve her tablet outside the designated "tablet call" time on one occasion; (3) McGinnis raised questions about her hair style on one occasion but took no adverse action against her; and (4) McGinnis did not allow her to hang a clothes line in her cell on one occasion. In connection with each of these four instances of alleged unequal treatment, Richardson describes a white inmate who was allegedly treated differently than her. While Richardson's allegations of disparate treatment are somewhat vague and indefinite, as a *pro se* litigant, she is entitled to have those allegations liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*pro se* complaints must be "liberally construed" and are "held to less stringent standards than formal pleadings drafted by lawyers"). Under this liberal

pleading standard, I find those allegations are sufficient to raise an inference that she was treated differently than similarly situated white inmates.

However, importantly, in each of the alleged four instances of discrimination, Robinson admits that McGinnis's actions were made pursuant to an ADC policy or safety concerns. *Doc. 2 at 6–8.* Furthermore, in her Response, Robinson concedes that McGinnis has never used racial slurs against her.[2] *Doc. 21 at 8.* Accordingly, as a matter of law, the four noted instances of alleged unequal treatment are not sufficient to support a reasonable inference that McGinnis discriminated against Richardson *based on her race. Weiler v. Purkett*, 137 F.3d 1047, 1052 (8th Cir. 1998) ("A few individual examples of unequal treatment are insufficient to provide more than minimal support to an inference of classwide purposeful discrimination.") (citation and quotation omitted).

Finally, other than an allegation that she felt "emotionally driven," Richardson has not alleged that she was injured by McGinnis's actions. Without an allegation that she was disciplined, or otherwise injured, Richardson's equal protection claim fails. *See Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007) (dismissing inmate's equal protection claim because he "was not injured, he was not disciplined, and he

---

[2] Although racial slurs alone do *not* constitute a constitutional violation, the use of such slurs in conjunction with other allegations of racial harassment could demonstrate intentional discrimination. *Glover v. Bostrom*, 31 F.4th 601, 605 (8th Cir. 2022), *reh'g denied*, No. 20-2884, 2022 WL 1564097 (8th Cir. May 18, 2022), and *cert. denied*, No. 22-6118, 2023 WL 350044 (U.S. Jan. 23, 2023).

was not transferred to another prison job or facility."); *see also* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act.").

Taking all facts alleged in Richardson's Complaint as true, and viewing those facts in a light most favorable to her, she has failed to state an equal protection claim against McGinnis for intentionally discriminating against her *on account of her race.* In addition, her equal protection claim fails, as a matter of law, because she has not alleged any injury resulting from the discrimination.

Accordingly, McGinnis is entitled to qualified immunity on Richardson's equal protection claims.

### 2. The Claim Against McGinnis In His Official Capacity Must Be Dismissed For Lack Of An Underlying Constitutional Violation

To the extent Richardson seeks to sue McGinnis in his official capacity,[3] that claim fails for lack of an underlying individual capacity constitutional violation. *Watson v. Boyd*, 2 F.4th 1106, 1114 (8th Cir. 2021); *Meier v. St. Louis*, 934 F.3d 824, 829 (8th Cir. 2019).

---

[3] *See* Richardson's Complaint, *Doc. 2 at 4* (indicating that McGinnis is sued in "both official and personal capacity").

### III. Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1. Defendant McGinnis's Motion for Judgment on the Pleadings (*Doc. 15*) be GRANTED.

2. Richardson's Complaint (*Doc. 2*) be DISMISSED, without prejudice, for failure to state a claim upon which relief may be granted.

3. The dismissal count as a "strike" for purposes of 28 U.S.C. § 1915(g).

4. Judgment be entered accordingly, and this case be CLOSED.

5. The Court CERTIFY, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal would not be taken in good faith.

DATED this 21st day of February, 2023.

_____
UNITED STATES MAGISTRATE JUDGE